Scott D. Hughes, Esq., SBN 253611
LAW OFFICES OF SCOTT D. HUGHES
620 Newport Center Drive
Suite 1100
Newport Beach, CA 92660
Telephone: (714) 423-6928
Facsimile:  (714) 845-0030
scott@scotthugheslaw.com

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY and PAMELA OLSEN, guardian ad litem for minors BRADEN LEE OLSEN and AUTUMN TAYLOR OLSEN; RONALD WHITLOCK, guardian ad litem for minor ANDREW EVANS<br><br>Plaintiffs,<br><br>vs.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; OFFICE OF THE CORRECTIONAL SAFETY FUGITIVE APPREHENSION TEAM, PAROLE DEPARTMENT, ORANGE COUNTY REGION; CITY OF COSTA MESA; OFFICER WISENER; OFFICER FETTIS; AGENT KRAUS; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. 3:08-cv-02035-JAH-BLM<br>Assigned to: Hon. John A. Houston<br>Magistrate Judge: Barbara L. Major<br>Courtroom: 13B<br><br>**PLAINTIFFS' MOTION FOR LEAVE TO AUGMENT EXPERT WITNESS DESIGNATION**<br><br>**DATE:**<br>**TIME:**<br>**COURTROOM: 1110**<br><br>**[CONCURRENTLY FILED AND SERVED WITH NOTICE OF MOTION AND DECLARATION OF SCOTT D. HUGHES]** |

---

1

Plaintiffs' Motion to Augment Expert Witness Designation and Disclosure

**TABLE OF CONTENTS**

Page

I. SUMMARY OF FACTS ........................................................................................ 2

II. PROCEDURAL HISTORY .................................................................................. 2

III. RULE 26 DISCLOSURES .................................................................................. 3

   A. Until the Stay ................................................................................................... 3

   B. After the Stay ................................................................................................... 3

IV. DISCOVERY ....................................................................................................... 4

   A. Police Incident Reports ................................................................................... 4

   B. Depositions ...................................................................................................... 4

V. PLAINTIFFS' PROPOSED RETAINED EXPERTS ........................................... 7

VI. MEET AND CONFER ........................................................................................ 7

VII. ARGUMENT ...................................................................................................... 7

   A. STANDARDS FOR ALLOWING TARDY DESIGNATION OF EXPERTS ...... 7

   B. PLAINTIFFS MEET ALL OF THE REQUIREMENTS FOR DISCLOSING ADDITIONAL EXPERTS ..................................................................................... 8

VIII. CONCLUSION ................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Davis v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) .......................................................... 8

*Lanard Toys, Ltd. v. Novelty, Inc.* 375 Fed. Appx. 705, 713 (9th Cir.Cal. 1020) .......................... 8

*Potlatch Corporation v. United States of America*, 679 F.2d 153, 156 (9th Cir. 1982) ................ 10

*Yeti by Molly, Ltd.* v. Deckers Outdoor Corp., 259 F.3d 1101, 1106-1107 (9th Cir. 2001) ............ 8

**Rules**

Rule 37(c)(1) ....................................................................................................................................... 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. SUMMARY OF FACTS

On November 1, 2007, Esther Evans, twenty-years old, was shot in the head, ear and thighs by two Costa Mesa police officers and a California Department of Corrections and Rehabilitation parole agent in Carlsbad, California. Ms. Evans is survived by three minor children.

The target of the police shooting was Brian Olsen who was driving a Chevy Tahoe at the time. Plaintiffs maintain that the shooting was unjustified and constituted excessive and unreasonable force. Plaintiffs, consisting of Esther Evans' three children, brought the herein action alleging the use of excessive force, violation of constitutional rights and wrongful death. The named defendants are: the California Department of Corrections and Rehabilitation; and Parole Agent Eric Kraus ("Correction Department defendants"); as well as the City of Cost Mesa, Police Officers Eric Wisener and Larry Fettis ("Costa Mesa defendants").

The physical evidence show that the officers had fired into the passenger side of the Tahoe and the Tahoe's front-end was positioned away from officers when they fired. However, during the depositions of the officers (which commenced only a few weeks ago), they testified that they fired into the front of the Tahoe while it was travelling toward them. Additional depositions of eye witnesses are continuing through the June 30, 2014 discovery cutoff.

Meanwhile, it is critical that the Court allow Plaintiffs to augment the above-identified retained and non-retained experts to resolve the contradictions between parties' respective versions of the events leading to Esther Evans' death.

## II. PROCEDURAL HISTORY

In addition to parole violation, Brian Olsen also faced charges in connection with Esther Evans' death. He is incarcerated. Plaintiffs commenced action on November 3, 2008 and filed a First Amended Complaint July 24, 2009. Because the parallel criminal proceedings involved the same events, the herein

civil action was stayed by order of this Court on August 31, 2009. The stay was lifted four years later on September 19, 2013. During the stay, all litigation was suspended.

## III. RULE 26 DISCLOSURES

### A. Until the Stay

Plaintiffs were initially represented by Rey L. Ochoa who substituted out in favor of Scott D. Hughes on April 15, 2013. Prior to the stay, the parties did exchange disclosure of experts in compliance with the FRCP Rule 26. Plaintiffs designated a psychologist and both Plaintiffs and Defendants designated experts on the use of excessive force. Costa Mesa defendants also designated: San Diego County Medical Examiner Dr. Craig Nelson and pathologist Dr. Othon Jose Mena; San Diego County Sheriff's Department criminalist Norman Pawchuk; and excessive force expert Joe Callanan.

### B. After the Stay

In February 2014, six months after the stay, Correctional Department defendants named an expert on forensic ballistics, Lance Martini, and an expert on the use of excessive force, Michael Pickett. The Costa Mesa defendants are keeping their expert on the use of excessive force Joe Callanan, but have indicated to Plaintiffs - - and to this Court in the parties' June 16, 2014 conference telephone call with Magistrate Judge Barbara Major - - that they have withdrawn or dropped all other previously named experts. However, it is clear that the Costa Mesa defendants did, early in the litigation, recognize that Esther Evans' manner of death and the dynamics surrounding the shooting are at issue. [2]

---

[2] The fact that Costa Mesa defendants have de-designated Doctors Nelson and Mena and criminalist Pawchuk should not affect Plaintiffs' entitlement to designate them as non-retained experts.

3

Plaintiffs' Motion to Augment Expert Witness Designation and Disclosure

## IV. DISCOVERY

Scott D. Hughes substituted in as Plaintiffs' counsel approximately 6 months before the stay was lifted, but received the portions of the case file from his predecessor Rey Ochoa in installments which prolonged Mr. Hughes review of Plaintiffs' file. Further, early this year, Defendants unleashed voluminous discovery responses, including over 10,000 pages of documents, in response to my additional document requests. Over 13,000 pages of discovery has been produced to Plaintiffs' counsel in this case. As of the preparation of the herein Motion, Mr. Hughes is still in the process of digesting all that Defendants have produced along with portions of Brian Olsen's criminal court records. *See,* Declaration of Scott D. Hughes, ¶ 3.

### A. Police Incident Reports

Among the boatload of documents from Defendants are reports made or prepared by the Costa Mesa police officers and the Correctional Department regarding the incident. In sum and substance, these reports state that the officers went to an address on Olive Street in Carlsbad to arrest Olsen who, in an effort to avoid arrest, rammed several police units with his Tahoe and ran over an officer's leg as he backed out of a driveway and down Olive Street, then reversed down Olive Street and drove past the officers in a threatening manner. Defendants further claim that they opened fire after Olsen switched gears and started to back up Olive Street toward them. *See,* Declaration of Scott D. Hughes, ¶ 7.

### B. Depositions

#### (1) Brian Olsen's deposition

While the criminal proceedings were pending, Plaintiffs did not have access to Brian Olsen who was jailed, awaiting trial, except for a five minute meeting to introduce Scott Hughes to Mr. Olsen. Scott Hughes attempted to visit Mr. Olsen while he was in prison to interview him as a key witness but his request was denied. He was eventually deposed on April 15, 2014, six months after the stay

was lifted. Until his deposition, Plaintiffs were not aware that his version of the incident differs substantially from the account maintained by the police. In sum and substance, Olsen testified under oath that, on the fateful night, he was approached by men in plainclothes who blocked his Tahoe truck with unmarked vehicles without headlights or sirens. The men neither identified themselves as members of law enforcement nor displayed their badges. He did not know why his path was blocked by unmarked vehicles or why several male strangers were about to get out of their vehicles. He testified that he backed out of a parking space and continued driving in the reverse along Olive Street until he reached the cross street, Garfield Street. He stopped at the intersection with the intent of switching gears to drive forward along Garfield Street when the men approached and fired into the passenger side of his vehicle, striking him in the right arm and Esther Evans in multiple parts of her body including the right side of her head. Olsen testified that he never drove back up Olive Street and, assuredly, never drove toward any of the men later identified to him as police officers.

Brian Olsen's testimony is, generally consistent with the physical evidence. *See,* Scott Hughes' Declaration, ¶ 7.

### (2) Defendants' Depositions

In November 2013, two months after the stay was lifted, Plaintiffs contacted defense counsels in an attempt to arrange for the depositions of the defendant/officers and other law enforcement officers who were eye witnesses. Because of the Thanksgiving and Christmas holidays, the parties decided to postpone depositions until early 2014 due to the officers' unlikely availability. In 2014, Plaintiffs learned that Costa Mesa Police Detective Wisener has relocated out of state and Detective Fettis has retired and other non-defendant witness officers had left the agency or retired. Their attorneys at Jones & Mayer agreed to cooperate in finding and producing them for their depositions, though, difficulties in coordinating the calendars of three law firms and the witnesses have proven to

be a challenge. Plaintiffs also sought the depositions of non-party officers who were present at the shooting and had to rely on defense counsel to make those arrangements. Ultimately, the depositions of the law enforcement personnel could not begin until the end of May and, as of the filing of the herein Motion, these depositions are continuing. To wit, all counsel are scheduled to take the deposition of Officer Parsons in Arkansas on June 23, 2014. *See,* Scott Hughes' Declaration, ¶ 5.

Because neither side anticipated these difficulties in scheduling the officers' depositions or the inconsistencies in the physical evidence and their deposition testimony, the Plaintiffs did not object to the Court's Scheduling Order which calls for disclosing experts in February and cutting off discovery June 30, 2014.

### (3) Summary of Defendant/Officers' Testimony

Parole agent Eric Kraus ("Kraus") and Costa Mesa Police Detectives Eric Wisener ("Wisener") and Larry Fettis, who fired a total of 26 rounds at Olsen's Tahoe, were deposed May 21, 22 and 26, 2014. The officers are themselves not unified in their respective versions of the incident. However, they essentially testified that Olsen drove erratically in the reverse down Olive Street, striking several cars along the way before changing gears and driving back up Olive at the officers. All three testified that they fired at Olsen while he was aiming his Tahoe at them. Their versions differ sharply from Brian Olsen's. *See,* Declaration of Scott Hughes, ¶ 8.

Further, the officers' testimonies do not shed light on how, if they were firing at the front of the Tahoe as it was allegedly barreling toward them, all of the shots found their way into the passenger side occupied by Esther Evans. While there exists scant evidence of shots fired at the front of the Tahoe, it is undisputed that the entire passenger side of the Tahoe is riddled with bullet holes. Further, it became evident, during these depositions, that the path taken by the Tahoe before the shooting, is controverted.

## V. PLAINTIFFS' PROPOSED RETAINED EXPERTS

A copy of Plaintiffs' retained trajectory and accident reconstruction expert's curriculum vitaes and preliminary reports will be shared with defendants upon the court's grant of the herein Motion. Declaration of Scott Hughes, ¶ 9.

## VI. MEET AND CONFER

Following the deposition of Brian Olsen on April 15, 2014, I alerted defense counsels that, depending on the testimonies of the defendant/officers, I may need to supplementally designate additional trial experts. Defense counsels were not at all receptive to that idea. It was only after the depositions of the defendant/officers that the need for supplemental designations matured and became necessary. *See,* Declaration of Scott Hughes, ¶ 14.

On June 12 and 13, 2014, Plaintiffs' counsel Scott Hughes contacted Defendants' attorneys and proposed stipulating to allowing Plaintiffs to designate two retained experts and the four non-retained experts Dr. Craig Nelson, Dr. Othon Joe Mena, Norman Pawchuk and Anthony DeMaria. Therein, Plaintiffs offered to reciprocate by letting Defendants designate rebuttal experts. Defendants' counsel, Emily Wada, declined to stipulate. Terrence Sheehy, counsel for State Defendants also declined to stipulate. By email, dated June 12, 2014, to June 13, 2014, Mr. Hughes repeated his request which was again rejected. *See,* Declaration of Scott Hughes, ¶ 15.

## VII. ARGUMENT

### A. STANDARDS FOR ALLOWING TARDY DESIGNATION OF EXPERTS

Plaintiffs recognize that FRCP Rule 26(a)(2) requires parties to exchange the identities of experts whom they intend to call as witnesses at the time of trial and exchange the experts' written reports containing their opinions and bases therefor. Rule 26(a)(2)(D) requires the disclosure to takes place as ordered by court or no later than 90 days before the trial date. Rule 26(e)(1) requires a party

7

Plaintiffs' Motion to Augment Expert Witness Designation and Disclosure

to supplement its initial disclosure (A) in a timely manner upon learning of new material facts or (B) as ordered by the court.

Further, Plaintiffs are aware that Rule 36(c)(1) bars the testimony of an experts who were not initially or supplementally disclosed in a timely manner. However, Rule 37(c)(1) was not designed to deprive the court of its discretion to allow expert testimony in appropriate circumstances. Rather, it expressly excepts the failure to timely name an expert/serve an expert's report where the failure "was substantially justified or is harmless." Rule 37(c)(1); *Yeti by Molly, Ltd.* v. Deckers Outdoor Corp., 259 F.3d 1101, 1106-1107 (9th Cir. 2001). In determining whether a violation of the discovery deadline is excusable or harmless, the courts typically consider these factors: (1) prejudice or surprise to the opposing party; (2) the ability of the affected party to cure the defect; (3) the likelihood that the tardy disclosure will disrupt trial; and (4) evidence of bad faith or willfulness in the failure to timely disclose. *Lanard Toys, Ltd. v. Novelty, Inc.* 375 Fed. Appx. 705, 713 (9th Cir.Cal. 1020); *Davis v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

## B. PLAINTIFFS MEET ALL OF THE REQUIREMENTS FOR DISCLOSING ADDITIONAL EXPERTS

Plaintiff will demonstrate, *infra,* that they meet all of the requirements for the grant of the herein Motion:

### (1) Defendants Cannot Claim Surprise and Will Not Be Prejudiced

The experts whom Plaintiffs seek to add or supplementally designate are in three categories: retained experts; experts already disclosed by Defendants; and a percipient expert who is known to Defendants but not designated by any party. Defendants cannot claim they are surprised or that they will be unduly prejudiced by the grant of this Motion as to any of the three categories.

**Retained Experts**: Plaintiffs wish to name two additional retained experts - - an accident reconstructionist and a forensic ballistics/firearms trajectory expert.

Defendants investigated the crime scene and prepared their reports five years ago. Defendants have also been acutely aware, for several years, that their version of the events, culminating in the shooting, contradicts the physical evidence. These contradictions were not made public until Olsen's deposition on April 15, 2014. On the other hand, Defendants have known for five years that experts will be needed to sort through the vigorously disputed accident sequence and logistics involved in the shooting. To wit, though none of the defendants has named an accident reconstructionist, the Costa Mesa City defendants and State of California defendants did separately designate ballistics experts Norman Pawchuk and Lance Martini.

Any claim by defendants that they are surprised by Plaintiffs' proposal to add retained experts is, therefore, negated.

**Non-retained Experts**: All the more, Defendants cannot claim they are surprised by Plaintiffs' proposal to designate non-retained experts, Doctors Craig Nelson and Othon Jose Mena as well as Norman Pawchuk. All three were designated by the Costa Mesa defendants before the stay in 2009. The fact that Costa Mesa defendants no longer plan to call them as expert witnesses at the time of trial should not affect Plaintiffs' right to include them on their list of experts.

(2) **Defendants will not be Prejudiced**

   (a) **Prejudice to Defendants can be Cured**

Nor is Defendants' claim of prejudice creditable. Plaintiffs' counsel Scott D. Hughes informed defense counsels of his clients' need for additional experts as early as late May 2014, following the defendant/officers' depositions. Defendants rejected the proposal, leaving no room for negotiations. If Defendants had cooperated, the supplemental disclosures would be well underway, sparing the parties of the time/expense of dealing with this Motion.

According to the court's scheduling order, discovery will be foreclosed after June 30, 2014, but pretrial disclosures are not due until November 3, 2014 and

final trial conference is seven months away. The court has not yet set a trial date. Plaintiffs have offered to stipulate to extend the discovery cutoff to accommodate the depositions of the parties' additional experts, while leaving the remainder of the scheduling order intact. Given these viable options, any claim by Defendants that they will be prejudiced by the grant of this motion is without merit.

### (b) Prejudice to Plaintiffs *Cannot* be Cured

Typically, the prejudice to the party moving to supplement/augment the disclosure of experts is not a factor in the court's decision regarding the Motion. However, in this case, justice compels the court to consider the undue prejudice to Plaintiffs in its decision. As discussed, *supra,* this action was filed November 3, 2008, but stayed beginning August 31, 2009. Plaintiffs' prior counsel did not have ample opportunity to conduct meaningful investigation or discovery. All litigation was suspended during the stay. Plaintiffs' current counsel substituted in April 15, 2013 and is in the throes of digesting boatloads of documents produced by Defendants. Depositions of parties and key witnesses are still on-going. Even though the court has not set a trial date, the parties are operating within a compressed time frame because this case is, essentially, five years old. These circumstances are beyond Plaintiffs' control - - a fact that must, in fairness and equity, play a role in the court's decision. *See, Potlatch Corporation v. United States of America*, 679 F.2d 153, 156 (9th Cir. 1982) (The Ninth Circuit Court of Appeals reversed a trial court's denial of the IRS' motion to vacate an order excluding the testimony of its experts because it missed the court-ordered disclosure schedule by seven weeks because the delays were attributed to circumstances beyond its control - - namely, the bureaucratic red-tape the IRS faced in trying to secure authority to hire experts and the time required by the experts to write their reports).

Through no fault of Plaintiffs or their current counsel, Plaintiffs only recently discovered the need for additional experts. As indicated, *supra,* any

prejudice suffered by Defendants can be cured by flexing the discovery schedule. On the other hand, there is no cure for the prejudice that would befall Plaintiffs, if this Motion is denied.

### (3) Trial Will Not Be Disrupted

This court has set a final pretrial conference for December 1, 2014, but has not yet set a trial date. Plaintiffs are not seeking a continuance of any trial-related due dates. Plaintiffs offer to immediately produce Alvin Lowi for his deposition and the firearms/ballistics expert's deposition as soon as he/she is named. Plaintiffs are willing to stipulate to an extension of the discovery cut off date to accommodate said expert depositions. As of the filing of the herein Motion, Plaintiffs have noticed the depositions of these non-retained experts as follows:

- ✓ Anthony DeMaria, June 24, 2014
- ✓ Norman Pawchuk, June 24, 2014.
- ✓ Dr. Craig Nelson, June 30, 2014 [3]
- ✓ Dr. Othon Mena, June 30, 2014

However, Dr. Nelson and Dr. Mena's offices have indicated they may be unavailable before the end of the current discovery cutoff.

Plaintiffs note that there is 4-month hiatus between the July 7, 2014 mandatory settlement conference and the November 3, 2014 pretrial disclosures. There is sufficient flexibility in the pre-trial schedule to accommodate the discovery and depositions of Plaintiffs' additional experts. Plaintiffs feel secure in the thought that this Court will not wish to forego the adjudication of their claim on its merits in order to adhere to a scheduling order.

///

///

---

[3] The two doctors' depositions might have to be continued to a date beyond the June 30 cutoff in order to accommodate their schedules. Hence, an extension of the discovery period appears imminent, regardless of the outcome of this Motion.

11

Plaintiffs' Motion to Augment Expert Witness Designation and Disclosure

### (4) Plaintiffs have not Acted in Bad Faith or Willfully Failed to Timely Disclose all Experts

As detailed, *supra*, Plaintiffs (like the IRS in *Potlatch*) faced circumstances that were beyond their control. Except for the filing of a First Amended Complaint, no depositions and scant discovery took place on Plaintiffs' behalf in the 10 months that immediately followed the commencement of action. That period of inertia was followed by a four-year stay during which all litigation was suspended. This is not the case of Plaintiffs who slumbered through their claim. Plaintiffs have actively prosecuted their claim in the months since the lifting of the stay. The children have dutifully submitted to depositions. Plaintiffs have submitted to depositions, produced Esther Evans' relatives for depositions and cooperated in arranging for defendants' deposition of Brian Olsen. As detailed above, through no fault of Plaintiffs, their depositions of the defendant/officers and other members of law enforcement who witnessed the shooting have been delayed. As a result of these delays, Plaintiffs only recently learned of conflicts/contradictions between the parties' respective versions of the facts leading to the shooting.

It is abundantly clear that Plaintiffs have not deliberately targeted this stage of the litigation to designate more experts for the purpose of delay or to ambush or harass Defendants or for any ill motive. Rather, Plaintiffs are taking action to assert a right which, but for the circumstances detailed above, would or should have been accomplished years ago.

///
///
///

## VIII. CONCLUSION

By the foregoing, Plaintiffs have demonstrated their entitlement to the grant of the herein Motion and issuance of an Order allowing them to augment their list of trial expert witnesses by adding the individuals identified in their Notice of Motion, *supra*, and granting a two-week time extension for Plaintiffs to designate experts on accident reconstruction and forensic firearms/trajectory determination.

Dated: June 19, 2014

Respectfully Submitted

LAW OFFICES OF SCOTT D. HUGHES

By: /s/ Scott D. Hughes
Scott D. Hughes
Attorney for Plaintiffs

# PROOF OF SERVICE

STATE OF CALIFORNIA }
COUNTY OF ORANGE   }

I am employed in the County of Orange, State of California. I am over the age of eighteen (18) and not a party to the within action; my business address is: 620 Newport Center Drive, Suite 1100, Newport Beach, CA 92660. On June 19, 2014, I served the foregoing document described as:

**PLAINTIFFS' MOTION FOR LEAVE TO AUGMENT EXPERT WITNESS DESIGNATION**

on the interested parties:

SEE ATTACHED LIST

[ ] (BY MAIL) I caused such envelope with postage thereon fully prepaid to be placed in the United States Mail at Newport Beach, California.
    I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepared at Newport Beach, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date of postage meter date is more than one day after the date of deposit for mailing in the affidavit.
[ ] (BY PERSONAL SERVICE) I delivered such envelope by hand to the offices of the addressee(s) above [ ] on the attached mailing list.
[ ] (BY FACSIMILE) On the interested parties in this action  The facsimile machine number that I used was_____.  No error was reported by the machine.
[X] (BY ELECTRONIC TRANSMISSION) I caused the delivery of such document to be served by electronic transmission ("E-MAIL") in accordance to standard procedures to the e-mail addressee(s) above [ ] on the attached mailing list
[X] (Federal) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 19, 2014, at Newport Beach, California.

_____
Heather N. Kane

---

iii
Plaintiffs' Motion to Augment Expert Witness Designation and Disclosure

## SERVICE LIST

**ATTORNEYS FOR COSTA MESA DEFENDANTS**
James Touchstone, Esq.
Harold W. Potter, Esq.
JONES & MAYER
3777 North Harbor Blvd.
Fullerton, CA 92835

**ATTORNEYS FOR STATE OF CALIFORNIA DEFENDANTS**
Kamala Harris, Esq.
Attorney General, State of California
Michelle Des Jardins, Esq.
Terrence F. Sheehy, Esq.
110 West A Street, Suite 1100
San Diego, CA 92101

Plaintiffs' Motion to Augment Expert Witness Designation and Disclosure